# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANNIE SLOAN INTERIORS, LTD. | * | CIVIL ACTION NO. 17-11767 |
| | * | |
| | * | SECTION: "S"(1) |
| VERSUS | * | |
| | * | JUDGE MARY ANN VIAL LEMMON |
| JOLIE DESIGN & DÉCOR, INC., AND | * | |
| JOLIE HOME, LLC | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |

## ORDER AND REASONS

Before the Court is the Motion to Quash Subpoena filed by defendants Jolie Design & Décor, Inc. ("JDD"), Jolie Home, LLC ("JHL"), and Lisa Rickert. (Rec. Doc. 293). The subpoena at issue was served by plaintiff Annie Sloan Interiors, Inc. ("ASI") on non-party CounterTake, LLC. Because the subpoena seeks relevant documents that will not be burdensome for CounterTake to produce and because the confidentiality concerns raised by the Defendants can be addressed by use of the attorneys' eyes only designation procedure provided for by the Protective Order in this case, the Motion to Quash is DENIED. CounterTake shall produce the requested documents, provided that Defendants may impose confidentiality designations pursuant to the Protective Order and may redact pricing information from the invoices and purchase orders produced. The documents shall be produced to ASI within ten days. Oral argument set for December 19, 2018, is CANCELLED.

## Background

ASI designs and manufactures paints and associated products under the trademarks ANNIE SLOAN® and CHALK PAINT®. Beginning in 2010, JDD, a company founded by Lisa Rickert, served as ASI's exclusive distributor of CHALK PAINT® in the United States. That relationship deteriorated over time. ASI filed this lawsuit in November 2017, seeking, among other things, a

1

declaration that the distributorship agreement between ASI and JDD was terminable upon reasonable notice. Following the District Court's May 4, 2018, summary judgment ruling agreeing with ASI's interpretation of the agreement, ASI notified JDD that the distributorship agreement would be terminated on November 5, 2018.

By June 2018, Ms. Rickert had formed the new entity, defendant JHL. ASI began to suspect that JDD and Jolie Home were competing or preparing to compete directly with ASI. They believed that Ms. Rickert was recruiting stockists to represent competing paint products and that JDD has stopped using the ANNIE SLOAN® mark in conjunction with the CHALK PAINT® mark on social media. On July 24, 2018, ASI filed a Motion for Preliminary Injunction, asking the court to issue an order prohibiting the Defendants from engaging in a list of activities in violation of the distributorship agreement and ASI's trademark rights and preventing JDD from sharing ASI's business relationships and confidential information with JHL and other competitors.

On October 12, 2018, the District Court granted ASI's motion and issued a preliminary injunction. In summary, the court ordered the Defendants to cease advertising JHL's products with materials that represent ASI products as JHL products; to warehouse any inventory of ASI products that had been labeled with JHL labels; to cease using labels for JHL's products stating or implying that JHL has been selling paint prior to November 5, 2018, or that JHL has been selling the same formula or the exact same product since any date prior to November 5, 2018; to cease using or creating advertising or labels for JHL's products using ASI's trademarks or trade dress; to store all advertising materials implicated by the order pending ruling on the merits of the case; to issue notice to stockists, suppliers, and public relations firms that Defendants have been enjoined from using advertising materials as described in the court's order; and to cancel or transfer to ASI any domain names incorporating ASI's trademarks.

Trial is set to begin June 10, 2019, and the discovery deadline is March 12, 2019. Defendants have recently filed a motion to continue the trial date or stay the proceedings (other than those necessary to enforce the Court's outstanding orders) pending their appeal of the preliminary injunction.

At issue now is a subpoena served by ASI on CounterTake, a company that assisted JHL in August 2018 with creating a brand video, video tutorials, and cut down versions of both to use in advertisements. In summary, the subpoena seeks: (1) communications between CounterTake and the Defendants or their affiliates (the "Entities") pertaining to video or photographic content created for those entities or to the court's preliminary injunction order; (2) documents or communications exchanged with the Entities including the phrases "chalk paint," "chalkpaint," "Annie Sloan," "Jolie Décor," "JDD," "Jolie Home," or "joliehome;" (3) invoices and purchase orders exchanged with the Entities; and (4) all video and/or photographic content created for the referenced Entities that display any paint products and/or painting techniques as well as all communications with the Entities that shares or discusses such content.

JHL admits that some of the footage shot by CounterTake displays the Jolie label that has been enjoined by the court and furniture painted with paint from ASI branded cans. Apparently, the majority of this footage was not salvageable following the preliminary injunction, and JHL hired CounterTake to re-shoot all video tutorials and digitally create the furniture and product used in the brand film. JHL asserts that the new footage does not contain any enjoined materials and that no footage has been released to date.

JHL has moved to quash the subpoena, arguing that the requested information would reveal trade secrets that would give ASI a competitive advantage. It also argues that the material sought is moot due to the preliminary injunction or premature because it concerns unreleased materials.

Law and Analysis

1. *Scope of Discovery and Standard for Challenging a Subpoena*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). Of note, with the 2015 amendment to Rule 26, it is now clear that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. In assessing proportionality of discovery, the following should be considered: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

Under Rule 45, the Court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception of waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. Proc. 45(d)(3); see Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 817–18 (5th Cir. 2004). The Fifth Circuit has held that a party cannot challenge subpoena issued to a third party where they were not "in possession of the materials subpoenaed and have not alleged any personal right or privilege with respect to the materials subpoenaed." Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979); see Frazier v. RadioShack Corp., No. CIV.A. 10-855-BAJ-CN, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) ("[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that . . . the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those

4

grounds"); 9A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2463.1 (3d ed.) ("Numerous cases have held that a party lacks standing to challenge a subpoena absent a showing that the objecting party has a personal right or privilege regarding the subject matter of the subpoena."). Thus, courts have required parties to show "a personal right or privilege in respect to the subject matter of the subpoena or a sufficient interest in it." Kiger v. Plaisance Dragline, No. CIV A 04-3153, 2006 WL 3228289, at *1 (E.D. La. Nov. 2, 2006). For example, a party has standing to challenge a subpoena seeking his financial and medical information because a party "has sufficient personal right and interest" in his financial and medical information. Mims v. B&J Martin, Inc., No. CV 17-07324, 2018 WL 1064411, at *2 (E.D. La. Feb. 25, 2018).

Further, courts have held that a party "has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena." Bounds v. Capital Area Family Violence Intervention Ctr., Inc., 314 F.R.D. 214, 218–19 (M.D. La. 2016). Rule 26(c) provides that the Court "may, for good cause," protect a party from "annoyance, embarrassment, oppression, or undue burden or expense" by issuing an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. Proc. 26(c)(1)(D). To satisfy "good cause," "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1325–26 n. 3 (5th Cir. 1978).

2. *Defendants' Confidentiality Concerns and Standing*

Defendants argue the subpoena should be quashed because the materials it seeks would reveal JHL's trade secrets and confidential information. Without further explanation, ASI argues

5

that the Defendants lack standing to challenge the subpoena. However, ASI has previously argued that the Defendants' interest in the confidentiality of marketing materials could not establish standing. Here, because the parties are direct competitors, the court finds that the Defendants have standing to challenge the subpoena based on their interest in the documents. Nonetheless, the court agrees with ASI's proposal. The Protective Order in this case provides for documents to be produced with an attorneys' eyes only designation to protect competitive marketing materials from being shared with the parties themselves. This protection is sufficient to alleviate the Defendants' concerns that ASI may benefit from discovering the content in the video footage that ASI has requested, such as brand content and story lines. Although in some cases a protective order may not be able to protect documents from future disclosure, the court finds no reason to suspect that the protections of the Protective Order would not be sufficient here. Accordingly, the subpoena will not be quashed on the basis of confidentiality concerns.

3. *Relevance of the Requested Materials*

Defendants also ask that the subpoena be quashed because it seeks irrelevant materials. They argue that because the preliminary injunction has already issued "ASI does not need to conduct additional discovery" with regard to the contents of the preliminary injunction. They add that they are complying with the injunction. And they submit that ASI is unlikely to have suffered any monetary damages from Defendants' representation of a product that was not yet on the market. Thus, they argue ASI's requests are disproportional with the needs of the case. Further, they argue that ASI's request for invoices is even less relevant because the cost of creating the content has no relevance to the content itself. Defendants argue that the request for video content seeks material that is enjoined from being released and which Defendants do not intend to release.

6

They add that because this material is not on the market, it cannot have damaged ASI. At best, they say, this request is premature.

ASI submits that even if Defendants have standing, they cannot challenge the relevance or proportionality of the requested information. Nonetheless, ASI argues that the requested materials are relevant and proportional to the case.

With regard to proportionality, ASI points out that Defendants are in no position to raise issues regarding the burden to be suffered by CounterTake in responding to the subpoena. Importantly, ASI and CounterTake have discussed the costs of production and ASI has already delivered a check to CounterTake to cover the invoiced costs. The court finds that undue burden is not an issue here.

As to relevance, ASI argues that video evidence and related communications remain relevant to its claims and the preliminary injunction has no effect on its ability to obtain it. The court agrees. The merits trial is forthcoming, and additional discovery on the issues addressed by the preliminary injunction is not barred by the issuance of the injunction.

ASI also argues that the fact that the materials have not been released does not make their discovery premature. ASI insists that it be allowed to test Defendants' purported compliance with the injunction—especially while they have a pending motion for contempt that challenges the way that JHL is now displaying photographic content to mimic ASI's trade dress. The court agrees that these materials are relevant and must be produced.

As to the invoices and purchase orders, ASI argues that these are relevant to showing that the videos were made while the distributorship agreement was in place and at what cost. It says that invoices after the date of the preliminary injunction will allow ASI to test Defendants' compliance with the injunction. The court agrees that the dates on which the video footage was

commissioned and paid for could be relevant. Invoices and purchase orders are an important way to determine those dates. It remains unclear why the cost of such work is relevant, however. Thus, at this time, the invoices and purchase orders may be produced with redaction of costs.

## Conclusion

For the foregoing reasons, the Motion to Quash (Rec. Doc. 293) is DENIED. CounterTake shall produce the requested documents, provided that Defendants may impose confidentiality designations pursuant to the Protective Order and may redact pricing information from the invoices and purchase orders produced. The documents shall be produced to ASI within ten days.

New Orleans, Louisiana, this 18th day of December, 2018.

                                          Janis van Meerveld
                                   United States Magistrate Judge